UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL LEVINE and EILEEN LEVINE,<br><br>                    Plaintiffs,<br><br>v.<br><br>CRUISE WEST,<br><br>                    Defendant. | No. C06-1649Z<br><br>ORDER |

Plaintiffs Paul and Eileen Levine were passengers aboard the Cruise West vessel Pacific Explorer in 2006, and were injured during a shore excursion in Costa Rica. Compl., docket no. 1, ¶¶ 3.1-3.2. Plaintiffs were aboard a Zodiac rigid inflatable boat from the Pacific Explorer when instructed to stand to disembark. Id. ¶ 3.4. The Zodiac "lurched upwards" and both Plaintiffs suffered injuries. Id. Defendant Cruise West brings this Motion for Partial Summary Judgment, docket no. 10, to limit recovery by Plaintiffs Levine to the U.S. equivalent of 46,666 Special Drawing Rights ("SDRs"), approximately $67,000 U.S., pursuant to the liability limitations clause in the Passage Contract. See Carnes Decl., docket no. 11, Ex. 1 (Passage Contract).

The Levines purchased their "Between Two Seas" cruise tickets in late February or early March 2006. Levine Decl., docket no. 13, ¶ 2. They received their travel documents,

ORDER - 1

including the document titled "TERMS & CONDITIONS OF PASSAGE CONTRACT" approximately two weeks before the cruise. Id. Mr. Levine read the terms and conditions before the cruise but did not understand that Cruise West was limiting its liability as it applied to the Levines' cruise to approximately $67,000. Id.

The Levines' cruise originated in Panama, aboard the Pacific Explorer, and ended in Costa Rica. The cruise began on March 27, 2006 and ended on April 5, 2006. Carnes Decl., docket no. 11, ¶ 5. The cruise did not call upon ports of the United States. See id.

**Discussion**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). The parties agree that the cruise passenger contract in this case is governed by the general maritime laws of the United States. See Wallis v. Princess Cruises, Inc., 306 F.3d 827, 834 (9th Cir. 2002).

A.   **Terms of the Passage Contract**

The enforceability of a damages limitation, such as the limitation found in subsection (e) of the Passage Contract's Terms and Conditions, is not a novel issue of law. Forum selection clauses, one-year limitation clauses, and choice of law clauses are frequently included in passage contracts and are routinely considered by the Courts. The Courts generally will uphold a provision that is "reasonably communicated" to the passenger. Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991) (enforcing forum selection clause in

ORDER - 2

passage contract); Dempsey v. Norwegian Cruise Line, 972 F.2d 998 (9th Cir. 1992) (enforcing one-year limitations period found); Paul v. Holland America Lines, Inc., 463 F. Supp. 2d 1203 (W.D. Wash. Nov. 6, 2006) (enforcing damages limitation); but see Dinklage v. Holland America Line-Westours Inc., 2007 WL 951844 (W.D. Wash. March 27, 2007) (refusing to enforce damages limitation). In order to be effective, a damages limitation in a Passage Contract must be reasonably communicated "so that a passenger can become meaningfully informed of [Passage Contract's] terms." Wallis, 306 F.3d at 835. Whether a ticket provides reasonable notice of a damages limitation is a question of law. Id. at 834 (citing Dempsey v. Norwegian Cruise Line, 972 F.2d 998, 999 (9th Cir.1992)).

The Ninth Circuit employs a two-pronged "reasonable communicativeness" test "to determine under federal common law and maritime law when the passenger of a common carrier is contractually bound by the fine print of a passenger ticket." Id. (citing Deiro v. Am. Airlines, Inc., 816 F.2d 1360, 1363 (9th Cir.1987)). The proper analysis considers the "overall circumstances on a case-by-case basis" and "not only . . . the ticket itself, but . . . extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." Id.

The Court first considers the physical characteristics of the ticket, including type size, the conspicuousness and clarity of the notice, and the ease with which a passenger can read the provisions in question. Id. The Court then considers the particular "circumstances," unique in each case, surrounding the purchase and retention of the Passage Contract. Id.

**1.    Physical Characteristics.**

In considering the physical characteristics of the notice, the Court looks to "[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." Id. (internal quotations omitted). The Passage Contract contains a notice on the front page of the "TERMS & CONDITIONS OF PASSAGE CONTRACT" which advises as follows:

ORDER - 3

> Guests are advised to read these terms and conditions, which among other things, contain limitations of liability and time limits for claims and suits.

Carnes Decl., docket no. 11, Ex. 1 (Passage Contract) at 6.  A subsequent section is titled, in bold type, "Limitations of Carrier's Liability" and contains various limitations.  Subsection (e) of that section is titled "Rule if Certain Limitations on Limit of Liability Held not to Apply" provision on which Cruise West seeks to rely:

> Should any or all of the limitations of liability set forth in these provisions be held not to apply with respect to personal injury and death or loss of or damage to baggage and personal property then the carrier shall be entitled to the benefit of all limitations, rights and immunities conferred by the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as amended by the Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1976, which limits carrier's liability for death or personal injury of a guest to no more than 46,666 Special Drawing Rights as defined therein (approximately $67,000 U.S. which fluctuates depending on the daily exchange rate printed in the Wall Street Journal).

Id., Ex. 1 (Passage Contract) at 10.  The subsequent subsection (f) considers circumstances where "the applicable limitations and exemptions" are held unenforceable.

Plaintiffs argue that Cruise West fails to meet the first prong by failing to provide "conspicuous notice" of its limitation of liability.  In support of this argument, Plaintiffs note that Cruise West failed to include the words such as "IMPORTANT NOTICE", or an equivalent, in its Passage Contract, and failed to label each page with the word "CONTRACT" to inform passengers of the binding nature of the agreement.  Plaintiffs also note that Cruise West failed to direct its guests to the specific provisions of the Passage Contract's terms and conditions which advise of Cruise West's liability limitation.

Plaintiffs urge that the physical characteristics of the Passage Contract at issue are "materially different from and inferior to" contracts approved by other courts, and are insufficiently conspicuous to reasonably communicate to passengers the limitation of liability.  Cruise West argues that the terms and conditions provide adequate notice because a notice on the face of the ticket advises passengers that Cruise West has limited its liability.

ORDER - 4

See Carnes Decl., docket no. 11, Ex. 1 (Passage Contract).  Cruise West also notes that section (e) specifically advises passengers that its liability for death or personal injury is limited to 46,666 Special Drawing Rights and provides the approximate exchange rate with U.S. funds, $67,000.

The notice of Cruise West's liability limitation was not printed in difficult to read "fine print"; however, it was written in difficult to read language, buried pages deep in the terms and conditions of the passage contract, and obscured by multiple liability limiting provisions intended to cover Cruise West's liability in a variety of alternative circumstances.  Unlike the terms at issue in Wallis, this Passage Contract provides the passenger with no direction to the relevant provision, and fails to provide a single "IMPORTANT NOTICE" advisory to the passenger.

More importantly, the specific terms of the Passage Contract advising of the 46,666 Special Drawing Rights liability limitation are not set off, highlighted, or made conspicuous in any way.  The liability limitation is buried in pages of text such that a reasonable passenger would not be made aware of the contract's terms, without a close and careful reading.  Even the title of subsection (e), "Rule if Certain Limitations on Limit of Liability Held not to Apply," fails to adequately apprise the passenger of Cruise West's limitation on liability.  Lastly, the complicated sentence structure of subsection (e), comprised entirely of a single sentence, is difficult to read and not conspicuous: the 46,666 SDR limit is buried at the end.

Judge Coughenour recently noted in Dinklage that failing to direct the passenger to the relevant limitations, inconspicuous headings, and confusing references to the applicability of the Athens Convention favored "Plaintiff's interpretation that there was not adequate notice of the liability limitation at issue."  2007 WL 951844, *3.  The Court in this case also finds that similar factors and physical characteristics of the Passage Contract compel a similar result.  The language of the limitations provisions were confusing and

ORDER - 5

difficult to read, for the average person, and no attempt was made to highlight the actual limitation of Cruise West's liability. Accordingly, the Court concludes that Cruise West's limitation of liability was inconspicuous and does not meet the first prong of the "reasonable communicativeness" test, as set forth in Wallis.

**2.     Extrinsic Factors.**

The Court also considers "extrinsic factors indicating the passenger's ability to become meaningfully informed." Wallis, 306 F.3d at 836. The Court may consider "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." Id. Cruise West frames the question as whether "it put the Levines on notice [of its limitation of liability] without having to go beyond the four-corners of the Passage Contract." The parties disagree as to whether the Levines were sufficiently on notice.

The Ninth Circuit in Wallis found that the Passage Contract failed on the second prong of the "reasonable communicativeness" test where it failed to specify an actual limitation of liability, and merely referenced the limitation in the "Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1976." See Wallis, 306 F.3d at 836. Unlike Wallis, the Levines' Passage Contract does set forth the limit on liability of 46,666 SDRs, and more importantly, the equivalent amount in U.S. funds, approximately $67,000. See Carnes Decl., docket no. 11, Ex. 1 (Passage Contract) at 10. However, while the Passage Contract presents more information regarding the actual limit of liability, the information is inconspicuously present in series of alternately applicable provisions, which apply if certain other limits of liability are held inapplicable. Moreover, simply specifying the monetary limit, although a good first step, does not place the passenger on notice if the limit is not explained, placed in context, or otherwise communicated to the customer.

The Courts in this district have reached different conclusions on whether specifying a monetary unit is sufficient to inform the passenger of the limitation. Compare Paul, 463

F.Supp.2d at 1208 (identification of 46,666 special drawing rights sufficient to put plaintiffs on notice of limitation of liability), and Dinklage, 2007 WL 951844 (identification of obscure monetary unit – 46,666 special drawing rights – insufficient to put plaintiff on notice of limitation).  Unlike the contractual provisions at issue in Paul and Dinklage, the Passage Contract terms identify equivalent U.S. funds (approximately $67,000).  However, while the identification of the equivalent in U.S. funds addresses part of the problem identified in these cases, the provisions fail to address another problem identified in Wallis and Dinklage: when the Athens Convention does not apply.

The Ninth Circuit in Wallis and Judge Coughenour in Dinklage both noted that ambiguity on the face of the contract, and

> hedging language provided a significant disincentive to study the ticket and become meaningfully informed, and that this disincentive counted as an extrinsic factor against finding that the limitation had been reasonably communicated.

Dinklage, 2007 WL 951844, at *6 (citing Wallis, 306 F.3d at 837).  The Court finds that the extrinsic factors weigh against a finding that the liability limitation was reasonably communicated to the Levines.[1]  Similar to the language used in Dinklage, the contract language at issue here contains the same ambiguous and hedging language.

According, the Court finds that the second prong of the "reasonable communicativeness" test in Wallis was not met in this case.  The Terms and Conditions fail to set forth sufficient information to allow the Levines to meaningfully understand Cruise West's intention to limit its liability.

///

///

---

[1] Mr. Levine notes in his declaration that he received the travel documents, including the Passage Contract, two weeks before embarking on the cruise.  Mr. Levine read the terms and conditions, but did not understand that Cruise West was limiting its liability as it applied to the Levines.  See Levine Decl., docket no. 13, ¶¶ 2-3.

ORDER - 7

**Conclusion**

For the reasons stated in this Order, the Court DENIES Defendant Cruise West's Motion for Partial Summary Judgment, docket no. 10. The Athens Convention limitation of liability set forth in the Passage Contract is inapplicable to the Levine's claims for injury.

IT IS SO ORDERED.

DATED this 11th day of April, 2007.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER - 8